AKZONA INCORPORATED, a corporation of Delaware, d/b/a American Enka B.V., a corporation of The Netherlands, and Aramide Maatschappij Vof, a partnership of The Netherlands, Plaintiffs,

v.

E.I. du PONT de NEMOURS & COMPANY, Defendant.

Civ. A. No. 84–10 LON.

United States District Court, D. Delaware.

June 2, 1987.

E. Norman Veasey (argued), and Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del. (C. Frederick Leydig (argued), and Charles Oslakovic of Leydig, Voit & Mayer, Chicago, Ill., Denis McInerney (argued), and P. Kevin Castel of Cahill, Gordon & Reindel, New York City, Robert Hardy Falk and Jonathan Jobe of Hubbard, Thurman, Turner &

Tucker, Dallas, Tex., of counsel), for plaintiffs.

Richard L. Sutton (argued), and Jack B. Blumenfeld of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Joseph M. Fitzpatrick and John O'Brien of Fitzpatrick, Cella, Harper & Scinto, New York City, of counsel), for defendant.

LONGOBARDI, District Judge.

Plaintiffs Akzona Incorporated ("Akzona"), Enka B.V. of Holland ("Enka") and Aramide Maatschappij VoF[1] have brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,[2] seeking a judgment that six patents relating to aramid fibers assigned to the E.I. du Pont de Nemours & Company ("DuPont") are invalid, unenforceable and noninfringed.[3] These high-strength, low density synthetic aramid fibers are manufactured from high molecular weight aromatic polyamide materials, *see* Docket Item ("D.I.") 1, ¶ 8; *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1149 (Fed.Cir. 1987) (affirming *Akzo*, 635 F.Supp. 1336 (E.D.Va.1986)), and are used commercially in roping, tires, aviation parts, bullet-proof clothing and boat hulls. *Akzo*, 810 F.2d at 1149; *see Akzo*, 635 F.Supp. 1336. Aramid fibers are sold by DuPont under the trade name Kevlar and by Enka under the name Enka Aramids and the trade name Twaron. Although Plaintiffs are European manufacturers which presently market primarily in Europe, they allege a stake in the American product market that may potentially be threatened by the DuPont patents.[4]

Plaintiffs also seek treble damages and injunctive relief for alleged violations of the antitrust laws and unfair competition by DuPont. The antitrust claims were previously bifurcated from the patent claims and stayed pending resolution of the patent dispute. *See Akzona, supra.* DuPont has counterclaimed against all of the Plaintiffs and Akzo, the sole owner of Enka and indirect owner of Akzona, for patent infringement.[5]

This is the second declaratory judgment suit litigated in this district by Akzona and/or its related corporations seeking to test the validity and enforceability of several of DuPont's aramid fiber patents. The earlier action was dismissed by Judge Schwartz in 1981 for lack of subject matter jurisdiction. *Enka B.V. of Arnhem, Hol-*

**1.** Akzona is a Delaware corporation and is to be the American distributor of aramid fibers produced by Enka B.V. Enka is a Dutch corporation engaged in the manufacture of such aramid fibers. Enka and Akzona respectively are direct and indirect wholly-owned subsidiaries of Akzo, N.V. ("Akzo"), also a Dutch corporation. Akzo is not a party to the present action. Finally, Aramide Maatschappij is a partnership between Enka and N.V. Noordelizke Ontwikkenbigsmaatschappij ("NOM"), the Dutch development agency. Plaintiffs are herein collectively referred to as Akzona.

**2.** The complaint was filed on October 12, 1983, in the United States District Court for the Western District of North Carolina. In November, 1983, DuPont moved for the transfer of the action to this court. Transfer was effected in January, 1984.

**3.** The six patents at issue are Patent No. 3,817,-941 issued to Blair and Morgan; Patent No. 3,819,587 issued to Kwolek; Patents Nos. 3,869,-429 and 3,869,430 issued to Blades; Patent No. 3,671,542 issued to Kwolek and reissued as Re. 30,352 ("the '352 patent"); and Patent No. 3,767,756 ("the '756 patent") issued to Blades. The Court dismissed Plaintiffs' claims as to the

'352 and '756 patents because of a lack of jurisdiction over the declaratory judgment action regarding those patents. *Akzona Inc. v. E.I. du Pont de Nemours & Co.*, 607 F.Supp. 227 (D.Del. 1984).

**4.** Akzona avers that the United States market is important because of the many large companies that engage in research and product development here. Purchasers of Enka Aramids may need several years of testing and product development before marketing the product and "may require definite commitments to guarantee future availability of commercial quantities...." D.I. 1, ¶ 13.

Aramid fiber is a "high learning" innovation. Thus, significant time and knowledge are required by both the producer and its customers before end uses are developed. *See* D.I. 168A, *In the Matter of Certain Aramid Fibers*, Invest. No. 337–TA–194, Initial Determination ("I.D.") at 93. As of 1985, Akzona's activity in the United States consisted of providing samples to prospective customers. *See id.*, International Trade Commission Opinion at 10.

**5.** The Court previously dismissed DuPont's counterclaim as to Akzo for lack of personal jurisdiction. *Akzona*, 607 F.Supp. at 236–41.

land v. E.I. du Pont, *519 F.Supp. 356 (D.Del.1981). The factual background and issues of this controversy are extensively outlined in both Judge Schwartz's* Enka *Opinion and this Court's Opinion in* Akzona.[6] The details need not be repeated here.

On April 18, 1984, six months after this suit was filed, DuPont filed a complaint with the United States International Trade Commission ("ITC") alleging that Plaintiffs were violating section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, by their unlawful importation into the United States or in their sale of aramid fiber manufactured by a process covered by the '756 patent.[7] On November 25, 1985, the ITC ordered that "[a]ramid fiber in the form of fiber, yarn, pulp, staple, chopped fiber, paper, felt, or fabric, made by [Plaintiffs] ... by a process that, if practiced in the United States, would infringe claim 13 of U.S. Letters Patent 3,767,756 shall be excluded for the remaining life of the patent...." D.I. 168A, *In the Matter of Certain Aramid Fibers,* Invest. No. 337–TA–194, Order at 3.[8] President Reagan took no action to disapprove the ITC's determination and, as such, the Order became final on January 26, 1986. In an opinion issued on December 22, 1986, the United States Court of Appeals for the Federal Circuit upheld the validity and enforceability of the '756 patent and affirmed the ITC Order. *See Akzo*

*N.V. v. U.S. Intern. Trade Comm'n,* 808 F.2d 1471 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987).[9]

Relying heavily on the outcome of the ITC proceeding and the Federal Circuit's affirmance, DuPont has moved to dismiss Plaintiffs' declaratory judgment action for lack of subject matter jurisdiction. Akzona vigorously disputes the basis of DuPont's motion and has alternatively moved to vacate the stay of the antitrust proceedings.[10]

The dictates of the Declaratory Judgment Act require that there be an actual controversy ripe for adjudication before jurisdiction vests in a federal district court. This requirement makes certain that constitutional mandates are maintained and ensures that District Courts do not needlessly engage in the process of issuing advisory opinions. Similarly, the constitutional requirement of a "case" or "controversy" requires that the actual controversy continue throughout the pendency of the lawsuit. *See, e.g., Preiser v. Newkirk,* 422 U.S. 395, 401–02, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *Intern. Medical Prosthetics v. Gore Enterprise,* 787 F.2d 572, 575 (Fed. Cir.1986). The issue before the Court is whether the ITC Order banning importation of aramid fibers made by a process that could infringe DuPont's '756 patent has acted to moot the existence of an actual controversy between the parties.

6. This case presents the unique circumstance wherein the issues involved have been previously considered in a prior action involving substantially the same parties which was dismissed for want of jurisdiction over the subject matter. Thus, where relevant, the Court relies on Judge Schwartz's Opinion in *Enka* and considers any changes in the factual issues in the interim between Judge Schwartz's Opinion and this Opinion.

7. The '756 patent covers a manufacturing process for aramid fibers. Enka's claim for declaratory relief as to this patent was dismissed from this action for lack of subject matter jurisdiction. *See supra,* note 3.

Because the '756 patent is not before this Court, there is no need to enter into the jurisdictional thicket that surrounds the ITC and District Courts. *See generally In Re Convertible Rowing Exerciser Patent Lit.,* 616 F.Supp. 1134, 1139–43 (D.Del.1985) (discussion of differences between ITC proceedings and District Court proceedings); H. Kaye, R. Lupo, and S. Lipman, *The Jurisdictional Paradigm Between the United States International Trade Commission and the Federal District Courts,* 64 J.Pat.Off.Soc'y 118 (1982) (discussion of the overlap between the ITC and District Courts in patent matters).

8. The '756 patent, and thus the ITC Order, expires on October 23, 1990. Each of the four remaining patents at issue in this litigation expires in either 1991 or 1992.

9. After the filing of the ITC action, this litigation proceeded contemporaneously through the discovery stage with the trial scheduled for January 5, 1987. The Court granted Akzona's motion for a continuance in November, 1986. D.I. 183.

10. Akzona's motion to lift the stay of antitrust proceedings will be treated under separate Order.

## I. DuPONT'S MOTION TO DISMISS

### A. Legal Standards

There is some dispute as to the proper characterization of DuPont's motion to dismiss. DuPont has styled its motion as grounded upon a lack of subject matter jurisdiction. Akzona vigorously opposes that characterization and rather seeks to label the issue as mootness. *See* D.I. 182 at 52; D.I. 221 at 2–3.

DuPont apparently does not contest that, as of the time of filing of the complaint, subject matter jurisdiction did exist.[11] While subject matter jurisdiction cannot be conceded by the parties, DuPont has not specifically asserted that this Court never had such jurisdiction over the instant case. Akzona thus argues that this case is distinguishable from Judge Schwartz's decision in *Enka*. In that case, subject matter jurisdiction never attached. Here, however, Akzona argues that it did attach and that DuPont is now seeking dismissal because of mootness. According to Akzona, DuPont thus bears the burden of showing that the patent claims should be dismissed.

A fundamental principle of federal jurisdiction is that the existence of jurisdiction is determined as of the time the complaint is filed. *Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 798 (7th Cir. 1980) (noting *Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir.1959)); *see Air Transport Ass'n v. Prof. Air Traf. Control*, 516 F.Supp. 1108, 1110 (E.D.N.Y.), *aff'd*, 667 F.2d 316 (2d Cir.1981). Further, "if jurisdiction exists at the outset of a suit, subsequent events will not divest the court of jurisdiction." *Smith*, 627 F.2d at 798; *see F. Alderete General Contractors v. United States*, 715 F.2d 1476, 1480 (Fed.Cir. 1983); *Air Transport*, 516 F.Supp. at 1110 (noting *Federal Dep. Ins. Corp. v. Tisch*, 89 F.R.D. 446 (E.D.N.Y.1981)).[12]

Thus, for example, if diversity jurisdiction is properly obtained at the commencement of a lawsuit, a subsequent change in domicile by a party will not work to destroy that jurisdiction. *Smith*, 627 F.2d at 798 (noting *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); 1 J. Moore, *Federal Practice* ¶ 0.74[1]). A similar result follows with the jurisdictional amount (amount in controversy) requirement. *Smith*, 627 F.2d at 798 (noting *Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 711, 30 L.Ed.2d 739 (1972); *State Farm Mutual Auto. Ins. Co. v. American Cas. Co.*, 433 F.2d 1007, 1009 (8th Cir.1970); 1 J. Moore, *supra*, ¶ 0.91[3]).

Therefore, Rule 12(h)(3), which allows the parties or the court to raise the existence of subject matter jurisdiction at any point along the continuum of a lawsuit, applies if jurisdiction never properly attached in the federal court. Rule 12(h)(3) is designed to ensure that the court only adjudicates cases which are within its limited jurisdiction.

Rule 12 also has application when "constitutional jurisdiction" does not exist, *i.e.*, there is no actual controversy. *See, e.g., International Video Corporation v. Ampex Corporation*, 484 F.2d 634, 636 (9th Cir.1973); *Chamfer Engineering, Inc. v. Tapco Intern.*, 498 F.Supp. 129, 131–32 (S.D.Tex.1980). As such, if an intervening event serves to destroy the justiciable controversy, Rule 12 provides a tool for the parties and the Court to inquire as to the continued power of the court to adjudicate the cause of action. The language of Rule 12(h)(3) clearly so provides: "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction

---

11. For example, DuPont did not raise the subject matter jurisdiction argument until *after* the ITC Order was issued. This *three year* period of silence raises a strong inference that DuPont has assumed the presence of subject matter jurisdiction. This inference is further strengthened in light of the fact that DuPont moved for a dismissal of the previous action *before filing an answer. Enka*, 519 F.Supp. at 359.

12. *See also Rosado v. Wyman*, 397 U.S. 397, 402, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970); *St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 293, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938); *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir.1980).

of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

## B. Declaratory Judgment Act

■ Under section 2201[13] of the Declaratory Judgment Act, it is essential that "a case of actual controversy within its jurisdiction" exists before a court can proceed to adjudication. *See Cutaiar v. Marshall,* 590 F.2d 523, 527 (3d Cir.1979); *Enka,* 519 F.Supp. at 360; *Forty-Eight Insulations v. Johns-Manville Products,* 472 F.Supp. 385, 393 (N.D.Ill.1979).[14] The Act does not provide a basis for jurisdiction in and of itself but, rather, provides a remedy. *Cutaiar, supra.* This is because federal courts can neither issue advisory opinions, *see Coffman v. Breeze Corporations,* 323 U.S. 316, 324, 65 S.Ct. 298, 302–303, 89 L.Ed. 264 (1945), nor decide hypothetical or abstract questions. *See Electric Bond Co. v. Comm'n.,* 303 U.S. 419, 443, 58 S.Ct. 678, 687, 82 L.Ed. 936 (1938). In short, as courts of limited jurisdiction, federal courts must confine their adjudicative capacities to concrete legal issues which are presented in the context of actual cases. *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (noting *United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947)).[15]

■ The measure of the concreteness of issues presented in a declaratory judgment action is necessarily a question of degree and, as such, courts do not determine the existence of an actual controversy by means of any precise test. *See Md. Casu-*

*alty Co. v. Pacific Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Jurisdiction must be present at the time of the filing of the complaint. *Super Products Corp. v. D P Way Corp.,* 546 F.2d 748, 752 (7th Cir.1976), *noted in Forty-Eight Insulations, supra.* Additionally, the court must determine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty,* 312 U.S. at 273, 61 S.Ct. at 512, *quoted in Golden,* 394 U.S. at 108, 89 S.Ct. at 959.

■ Declaratory judgment actions in patent cases serve two important interests. First, they prevent patentees from threatening would-be competitors with legal action while hiding behind the presumption of patent validity and refusing to actually litigate the validity of the patent or the legitimacy of the claim of infringement. *Enka,* 519 F.Supp. at 361. Second, such actions allow potential competitors to determine whether a market is open to them without requiring them to commit their resources to an activity which could result in patent infringement and liability for damages. *Id.* Despite these laudable goals, as in any declaratory judgment action, courts may only decide conflicts involving patents which fall within the boundaries delimited by article III of the Constitution. *See Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 1117–1118, 87 L.Ed. 1450

---

**13.** Section 2201 provides in full:

In a case of actual controversy *within its jurisdiction,* except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (Emphasis added).

28 U.S.C. § 2201(a).

**14.** The Act's "actual controversy" requirement is identical to the constitutional requirement of "cases" and "controversies." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937), *noted in Cutaiar,* 590 F.2d at 527; *see Jervis B. Webb Co. v. Southern Systems, Inc.,* 742 F.2d 1388, 1398 (Fed.Cir. 1984).

**15.** The power of the federal courts extends only to situations wherein the interests of litigants require the use of judicial authority for protection against actual interference. "A hypothetical threat is not enough." *United Public Workers,* 330 U.S. at 89–90, 67 S.Ct. at 564, *quoted in Golden,* 394 U.S. at 110, 89 S.Ct. at 960.

(1943).[16] In short, an actual "case" or "controversy" within the meaning of article III must exist at all times during the action. The rights claimed "must be in existence and at risk before there is a case or controversy for judicial resolution." *Id.* (noting *Md. Casualty Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826); *see Dewey & Almy Chemical Co. v. American Anode*, 137 F.2d 68, 70 (3d Cir.), *cert. denied*, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943). Further, "[t]he question of justiciability is such a jurisdictional point that it may be raised at any point." 6A J. Moore's, *supra*, ¶ 57.11 (noting *McGrath v. Kristensen*, 340 U.S. 162, 167, 71 S.Ct. 224, 228, 95 L.Ed. 173 (1950)); *see United States v. Corrick*, 298 U.S. 435, 440, 56 S.Ct. 829, 831–832, 80 L.Ed. 1263 (1936); *King Bridge Co. v. Otoe County*, 120 U.S. 225, 226, 7 S.Ct. 552, 552–553, 30 L.Ed. 623 (1887), *noted in McGrath*, 340 U.S. at 167 n. 9, 71 S.Ct. at 228 n. 9.

In patent cases, "[d]eclaratory judgment jurisdiction ... exists when an examination of the 'totality of the circumstances' indicates that an 'actual controversy' exists between the parties involved." *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 882 (Fed.Cir.1985), *cert. denied*, — U.S. ——, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986) (noting *Md. Casualty Co.*, 312 U.S. at 272, 61 S.Ct. at 511–512; *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed.Cir. 1983)). As in all other litigation, the case or controversy must exist as of the date of the filing of the complaint. *Jervis B. Webb*, 742 F.2d at 1398 (citations omitted).[17] Similarly, the existence of a controversy must be determined on a claim-by-claim basis. *Id.* at 1399.

■ The standards for determining whether a declaratory judgment complaint in a patent case presents an actual case or

controversy are well established. First, the Court must determine whether the case "properly arises under federal laws so as to permit invocation of federal jurisdiction." *Enka*, 519 F.Supp. at 361. Broadly speaking, in determining whether jurisdiction exists, courts will test the basis of the claim by observing the obverse of the claim. *Akzona*, 607 F.Supp. at 230. In other words, the adverse action that the declaratory plaintiff seeks to prevent must arise under federal law. *Enka*, 519 F.Supp. at 361. Thus, in this case, subject matter jurisdiction will lie if DuPont could jurisdictionally maintain a suit against Plaintiffs for infringement and enforcement of its patents. *See Id.*

Further, in order to establish the need for a declaratory judgment, Akzona must adduce evidence to meet two tests. First, it must show that DuPont's conduct has created a reasonable apprehension that it will be subjected to an infringement suit if it commences or continues production. *See Jervis B. Webb*, 742 F.2d at 1398–99, *quoted in Indium Corp.*, 781 F.2d at 883; *Interdynamics, Inc. v. Wolf*, 698 F.2d 157, 166–67 (3d Cir.1982); *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 109 F.R.D. 673, 675 (D.Del.1986); *Polaroid Corp. v. Berkey Photo, Inc.*, 425 F.Supp. 605, 607 (D.Del.1976).[18] This test ensures that there is "live adversity" between the parties. *Enka*, 519 F.Supp. at 361. Second, it must show that "its claim is concrete rather than academic by credible allegations of immediate intent and ability to undertake the business that must bring it into collision with Defendant's patent claims." *Enka*, 519 F.Supp. at 361 (citations omitted); *see Jervis B. Webb*, 742 F.2d at 1399; *Interdynamics*, 698 F.2d at 166–67; *Procter & Gamble*, 109 F.R.D. at 675. Taken together, the tests assure that declaratory

---

**16.** As Judge Schwartz noted in *Enka*, "[t]hese admirable policies, do not, however, constitute the courts as roving inquirers into patent validity." *Enka*, 519 F.Supp. at 361.

**17.** In *Jervis B. Webb*, the Federal Circuit explicitly did not reach the issue of whether the establishment of declaratory judgment jurisdiction at the time of the action's filing is sufficient "to sustain the case or controversy requirement to

the conclusion of the action...." 742 F.2d at 1398 n. 6.

**18.** Reasonable apprehension is established by an objective test. *Indium Corp.*, 781 F.2d at 883 (noting *Jervis B. Webb*, 742 F.2d at 1298–99). "A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement." *Id.*

judgment jurisdiction is "confined within constitutional limits by judicial inquiry into imminent events that must grow out of existing situations." *Enka,* 519 F.Supp. at 361.

## 1. Does the Case Arise Under the Patent Laws?

■ Under 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents.... Such jurisdiction shall be exclusive of the courts of the states in patent ... cases." *Id.*[19] The complaint seeks a declaratory judgment of noninfringement, invalidity and unenforceability as to six DuPont patents. D.I. 1, ¶ 1. In effect, the declaratory judgment complaint raises defenses upon which Akzona would rely should DuPont seek to sue Plaintiffs for infringement under 35 U.S.C. § 271. In the patent law, invalidity and unenforceability, as well as noninfringement, are merely affirmative defenses. It is well established that federal subject matter jurisdiction may not rest on defenses but must instead rest on affirmative claims of federal rights. *Louisville & Nashville Railroad Company v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Thiokol Chemical Corp. v. Burlington Industries, Inc.,* 448 F.2d 1328, 1330–31 (3d Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). As such, "the Court must consider not [Akzona's] claims of patent invalidity, but duPont's federal rights whose force [Akzona] seeks to vitiate by declaratory judgment." *Enka,* 519 F.Supp. at 362.

■ Under 35 U.S.C. § 271, infringement—DuPont's federal right—must occur within the United States. *See* 35 U.S.C. § 271(a). In a case involving foreign manufacturers, this means that the potential infringing activity must take place in the United States. As this Court noted in *Akzona,* a "United States patent gives the owner of the patent a monopoly of use within the United States." *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 527, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273 (1972), *quoted in Akzona,* 607 F.Supp. at 230. In *Deepsouth,* the Supreme Court stated that the patent statute "makes it clear that it is not an infringement to make or use a patented product outside of the United States." 406 U.S. at 527, 92 S.Ct. at 1706, *quoted in Akzona,* 607 F.Supp. at 230. In dismissing Plaintiffs' declaratory judgment action as to two of DuPont's patents, one covering an intermediate substance (the '352 patent) and the other a process (the '756 patent), this Court held that DuPont could not seek enforcement of those patents against Enka's European manufacturing activities. *Akzona,* 607 F.Supp. at 230.

The Court could, however, have subject matter jurisdiction over the four remaining *product* patents-in-suit. Should Akzona import products that potentially infringe those patents, DuPont could jurisdictionally maintain a suit for infringement under section 271. Thus, the Court must next consider whether the facts establish that an actual case or controversy, as required by the Constitution and the Declaratory Judgment Act, remains in existence.

## 2. Is there a case or controversy?

### (a) Reasonable Apprehension

■ In *Enka,* Judge Schwartz found that Enka had reason to anticipate legal action by DuPont if it attempted to enter the American market. 519 F.Supp. at 369–70. Akzona restates its concern over threats by DuPont to sue for infringement in the complaint. D.I. 1 at ¶¶ 16–19. It is doubtful that any reasonable apprehension by Akzona was ameliorated by the passage of five years' time, especially when one considers that Enka has been increasing production in an attempt to export its product into the U.S. market.[20] Similarly,

---

**19.** Section 1338(b) provides that the District Courts also have "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the [patent laws]." 28 U.S.C. § 1338(b).

**20.** Additionally, between 1979 and 1982, DuPont brought suit against Enka or its affiliates in

Judge Schwartz noted that comparable cases indicated that "a less fully-documented showing [of apprehension] would be adequate." *Id.* at 369 (noting *Treemond Co. v. Schering Corporation,* 122 F.2d 702 (3d Cir.1941); *Ethicon, Inc. v. American Cyanamid Company,* 369 F.Supp. 934 (D.N.J.1973)).

■ On the issue of reasonable apprehension, Plaintiffs' degree of commercial activity within the United States is not a factor of serious concern. So long as the threats have been made, there is no need for Enka to establish a level of business that would lead DuPont to sue for patent infringement. If Akzona would have to wait to establish a level of American business that DuPont felt threatening, "[it] would be gored by the horns of the very dilemma the Act was intended to tame. It would be stymied by arguably invalid patents that could only be challenged at the risk of losing a substantial investment." *Enka,* 519 F.Supp at 370.

The Court finds that Akzona's reasonable apprehension of legal action by DuPont existed when it filed its complaint and remains to date.

### (b) Intent and Capacity to Enter the U.S. Market as of 1983

DuPont argues that an actual controversy no longer remains because no aramid fibers can be shipped to the United States. Akzona counters that (1) the ITC Order does not cover products containing aramids, *i.e.,* liability for contributory infringement; and (2) DuPont has threatened to bring suit against Akzona's customers, *i.e.,* customer liability.

It is clear that even "the most liberal interpretation of justiciability will not admit to an active controversy in the absence of either some imminent infringing conduct or some assertion of the same." *Polaroid,* 425 F.Supp. at 609. Thus, the second prong of the declaratory judgment justiciability standard centers on market activity.

The issue is whether market activity which could potentially infringe DuPont's patents has taken place or is about to occur. In other words, Plaintiffs "must have actually produced the accused device or have actually prepared to produce such a device." *Jervis B. Webb,* 742 F.2d at 1399; *see Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.,* 439 F.2d 871, 875 (1st Cir. 1971). Further, as noted *supra,* Plaintiffs must have the immediate intent and capacity to enter the United States market. *See Enka,* 519 F.Supp. at 370.

■ It thus follows that not only must Plaintiffs have serious and immediate plans for undertaking the infringing activities, *i.e.,* they are producing or about to produce aramid fibers, but that they must have the potential for infringing DuPont's patents within the United States. Such infringement could occur in three ways: (i) importation into the United States of products that contain Enka Aramids; (ii) direct importation to the United States of Enka Aramids by Akzona; and (iii) exportation to the United States of Enka Aramids by foreign customers of Enka. For purposes of discussion, (ii) and (iii), *supra,* will be treated together.

### (i) Customer Liability and Contributory Infringement Liability

Section 271(a) provides that "whoever without authority makes, uses or sells any patented invention, *within the United States* during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Thus, Enka argues that its European aramid fibers customers are potential direct infringers of DuPont's United States patents and hence subject to liability for infringement under the statute should they export finished products that contain Twaron to the United States. Threats of suit against customers of Akzona have apparently required them to enter into indemnification agreements

Great Britain, France and West Germany. *See* D.I. 1, ¶ 16. Foreign litigation or threats of litigation against other domestic competitors

can be sufficient basis for reasonable apprehension. *See Dewey & Almy Chemical Co.,* 137 F.2d at 69–71; *Ethicon,* 369 F.Supp. at 937.

with purchasers of the fibers.[21] Clearly, Akzona has an interest in the freedom of its customers to engage in commerce in the United States. Should these customers desire to enter the American market and should the threat of litigation loom on the horizon, they could well opt to use Du-Pont's Kevlar fiber in their finished products.

■ Similarly, Akzona itself would be subject to liability for inducing infringement of DuPont patents under 35 U.S.C. § 271(b) and (c). *See, e.g., Nippon Elec. Glass Co., Ltd. v. Sheldon,* 489 F.Supp. 119 (S.D.N.Y.1980).[22] Contributory infringement is the aiding or abetting of another in the direct infringement of a patent. The inducing activity may take place outside of the United States, so long as the direct infringement occurs within the United States. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir. 1975); *Nippon,* 489 F.Supp. at 122.

■ Akzona thus strenuously contends that the fact that it has been forced to enter into indemnification agreements provides a basis for an actual controversy. To this end, Akzona cites broad language in the *Nippon* opinion:

> Moreover, plaintiff has entered agreements with Sony and Panasonic to indemnify them against any liability they may incur due to the subject patents. This circuit has previously held that such an agreement between a manufacturer and its licensee-customer creates an actual controversy such that the manufacturer may seek a declaratory judgment of the patent's invalidity even when the indemnitor is not chargeable as a contributory infringer.

*Nippon,* 489 F.Supp. at 122 (noting *Joseph Bancroft & Sons Co. v. Spunize Co. of America,* 268 F.2d 522, 523 (2d Cir.1959)). The Court is not convinced, however, that the mere fact that an agreement may exist, unsupported by evidence that the indemnitees are actually exporting products to the United States, provides an independent basis for establishing the existence of a case or controversy. In point of fact, both *Nippon* and *Joseph Bancroft* are distinguishable on this ground. The latter involved a producer and a manufacturer both of whom were located in the United States. In *Nippon,* it appears undisputed that the products incorporating the infringing product were actually being shipped into the United States. It is clear beyond cavil, both in the plain language of the statute and the case law, that direct infringement must occur within the United States before infringement liability will lie. *See, e.g., Deepsouth, supra.* Were the requirement any different, a foreign corporation wary of infringement liability in the future could seek to litigate patent validity simply by entering into an indemnification agreement with any of its customers, regardless of that customer's market activity within the United States. Absent a showing of the potential for direct infringement, this Court is without jurisdiction. Such an adjudication would be tantamount to an advisory opinion.

■ Therefore, under either a customer liability or contributory infringement theory, Plaintiffs must show that the resulting product is or soon will be actually shipped to the United States in significant enough quantity to support a showing of immediacy. In this regard, the factual issue as to whether finished products containing Enka Aramids are presently or soon will be making their way into the United States is the subject of some dispute.

---

**21.** General averments of this nature have been made but Akzona has not pointed to evidence of such agreements in the record.

**22.** Section 271(b) states: "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Title 35, section 271(c) of the United States Code states:

"[w]hoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

Enka apparently did not rely on customer use of its fibers in *Enka.* Indeed, Judge Schwartz's consideration of imminency with regard to the importation of fibers was restricted to Enka's plan to sell the raw fiber in the United States. During the ITC proceedings, DuPont argued for an expansive exclusionary order covering products containing Enka Aramids and posited that if the order were limited solely to the fibers themselves, "it is certain that Akzo will vigorously promote penetration by articles fabricated from such fiber forms. Prudent business judgment dictates such an effort...." D.I. 168A, ITC Opinion at 8. Despite DuPont's argument, the ITC Opinion noted specifically that the Administrative Law Judge ("ALJ") had made *no* findings as to "products other than the basic forms of aramid fiber." *Id.* at 11–12. Akzona now argues that DuPont's contention before the ITC somehow conceded the importation of products containing potentially infringing fiber. D.I. 175 at 9–12.

There are two responses to Akzona's position. The first is the basic proposition that the requirements for an actual controversy flow from the Constitution and, hence, cannot be conceded or waived. *See Travelers Indemnity Co. v. Standard Accident Insurance Co.,* 329 F.2d 329, 330 (7th Cir.1964) (stipulation by parties immaterial), *noted in* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757. The actual controversy requirement concerns the fundamental power of the court to decide justiciable controversies and, as such, an actual controversy either does or does not exist. Second, despite a strong contention before the ITC, the Commission did not adopt DuPont's argument.

Whether because there was insufficient evidence to find that such products would potentially injure a domestic market or because an expanded order would be difficult to police, the ITC made no finding as to aramids other than the basic fibers. Therefore, the Court finds no evidence from the ITC proceeding to indicate a potential direct infringement through such products.

■ Akzona has come forward with no affidavits or other evidence to indicate that such actual direct or contributory infringement has occurred, is now occurring or will soon occur. Indeed, in their answering brief to DuPont's motion to dismiss, Plaintiffs simply make the bald assertion that they "are producing fiber from their commercial plant and selling it to customers which market internationally, including the United States." *Id.* at 18.[23] As DuPont points out, this statement does not even assert that the customers are *presently or soon will be marketing products containing Twaron within the United States. See* D.I. 178 at 2. Especially given the dismissal of the earlier action on the ground that subject matter jurisdiction was lacking, the Court assumes that Plaintiffs would be forthcoming with such information if available. The complaint and the record are simply devoid of evidence of *specific* examples of immediate potential customer liability or liability for contributory infringement. Further, counsel could point to no such specific examples at oral argument. *See* D.I. 182 at 35–40.[24]

The Court finds that Akzona's customers did not have the present intent and ability to enter the United States market in 1983 and do not have that ability presently.

**23.** The complaint avers that "ENKA plans to sell ENKA ARAMIDS in large quantities in the major industrial countries, including the United States, and in the meanwhile ENKA has been, is and will continue to sample and sell quantities of ENKA ARAMIDS ... to potential customers ... for the purpose of encouraging them to become large scale users of ENKA ARAMIDS as soon as larger product quantities become available." D.I. 1, ¶ 12.

**24.** The Court engaged in a colloquy with counsel directly on this point and counsel simply

could point to no customers who were immediately ready to import products containing Twaron. Akzona submitted an affidavit from Mr. Kastel, D.I. 190, which stated that there was such a customer—although there is no indication that it was a foreign customer—but that the protective order in the ITC proceeding barred the use of that deposition testimony in this Court. *Id.* The fact remains that Akzona has not carried its burden of establishing the existence of an actual controversy through this potential avenue of infringement.

### (ii) Importation of Aramid Fibers

Because the Court concludes, *supra,* that Akzona has not shown the requisite immediate intent and capacity of its customers to enter the United States market, declaratory judgment jurisdiction, *i.e.,* an actual controversy, must be based on the intent and capacity of Akzona to import potentially infringing raw fibers.

As noted earlier, DuPont has not directly questioned the existence of this jurisdictional foundation at the time of the filing of the complaint in 1983. Clearly, neither subject matter jurisdiction nor the existence of an actual controversy can be conceded and, if it appears to the Court that such jurisdiction never attached, the Court has an obligation to raise the issue *sua sponte. See, e.g., Levinson v. Continental Insurance Services,* 655 F.Supp. 275, 276 (D.Del.1987); Fed.R.Civ.P. 12(h)(3); *see also McGrath, supra.*[25] In this instance, for the reasons outlined below, the Court need not reach the issue of whether Akzona established the requisite actual controversy in 1983. Assuming *arguendo* that the requisite requirements were met as of that time, the case must nevertheless be dismissed because an actual controversy no longer exists.[26]

 The ITC Order excludes aramid fiber that could infringe claim 13 of the '756 patent. As noted *supra,* because it is a process patent, the '756 patent *a fortiori* cannot be infringed by European manufacturing processes. *See, e.g., Deepsouth, supra.* Therefore, the Court dismissed the declaratory judgment action as to the '756 patent in 1985. As such, DuPont urges that because the ITC Order prohibits the importation of aramid fibers made by a process that could infringe the '756 patent into the United States until 1990 and be-

cause this Court has no jurisdiction to consider the '756 patent, the one jurisdictional prong on which the declaratory judgment action lies has been destroyed. Put another way, because Akzona is barred from importing aramid fiber until 1990, it cannot directly infringe the patents-in-suit. Hence, no actual controversy remains.

Akzona contends (1) that the patents at issue will continue past the life of the '756 patent; and (2) as a safety net, that the Court should broadly construe the Declaratory Judgment Act with a view to the totality of the circumstances. D.I. 175 at 17.

In effect, the immediacy of the declaratory judgment action has been called into question. Because of the ITC Order, even if Akzona was previously prepared to engage in commercial activity sufficient to give rise to a cause of action for infringement, no such activity can take place until the latter part of 1990. Thus, the issues for the Court are whether (1) the actual controversy remains despite the ITC Order's practical effect; and (2) the totality of the circumstances indicate that there remains a live dispute over the concrete issues between these two adverse parties, *i.e.,* given the previous history of the case and the potential for future encounters, should the Court exercise its jurisdiction to allow the case to go forward at present.

 The Declaratory Judgment Act does have a broad, remedial purpose and, therefore, should be construed liberally. *See Enka,* 519 F.Supp. at 360 (citations omitted). Nonetheless, the mere recitation of such broad principles of construction neither serves as a substitute for the analysis of patent declaratory judgment actions as developed by the Federal Circuit, nor considers the effect of the ITC Order. In short, no matter how broadly or liberally

---

**25.** Mootness is also a jurisdictional question that may be raised by the Court. *See Benton v. Maryland,* 395 U.S. 784, 787–88, 89 S.Ct. 2056, 2059, 23 L.Ed.2d 707 (1969); *McLaughlin v. Hoffman,* 547 F.2d 918, 919 n. 2 (5th Cir.1977), *noted in* 6A J. Moore's, *supra,* ¶ 57.13 n. 1.

**26.** At the request of the Court, Akzona filed a supplemental memorandum, D.I. 221, which sets forth portions of the ALJ's findings regarding Akzo's penetration into the United States

market. While it is not clear that Akzo's market presence in 1983 was sufficient enough to constitute a serious and immediate plan to enter the United States market, it seems clear that on the eve of the ITC decision, Akzo was indeed supplying sufficient quantities of aramid fiber to establish an actual controversy. In short, by 1985, it appears that Akzo was ready to "plunge in" to the commercial waters.

the Act is to be construed, an actual controversy must exist. The plain language of both the statute and the Constitution require it.

■ While it is true that the patents at issue do extend beyond the period of the ITC Order, the Court cannot agree that because the ITC Order expires in three years, a sufficient actual controversy exists at this juncture. In short, the fact that DuPont may seek to enforce its patents if Akzona imports fibers into the United States after October 23, 1990, does not provide an actual controversy within the confines of article III. Akzona simply does not have the present capacity to enter the United States market. To rule on the issue would be tantamount to rendering an advisory opinion to be filed away for future reference. Akzona argues that there is a real controversy now because of the "absolute certainty" of the expiration of the ITC Order.[27] Even given the broad remedial purpose of the Declaratory Judgment Act, the Court concludes that such a basis for jurisdiction is too speculative. As DuPont asserts, no one can know that the aramid fiber market will be like in 1990 or what Plaintiffs' position will be within that market. There simply is not a sufficient degree of immediacy to warrant the issuance of a declaratory judgment.

Further, and more importantly, nothing that the Court decides with respect to the four remaining patents could affect the ITC Order. Because the '756 patent is not before the Court, even a finding of invalidity and unenforceability or noninfringement regarding any of the four patents-in-suit would add nothing to Akzona's present ability to import aramid fibers. The Opinion would be purely advisory because, at present, there simply is no actual controversy between the parties. Even assuming that it is presently commercially prepared to enter the United States market, Akzona cannot infringe DuPont's patents within the United States until 1990.

As noted *supra,* the Federal Circuit in *Jervis B. Webb* did not reach the issue of whether initial declaratory judgment jurisdiction is sufficient to sustain the case or controversy requirement throughout the litigation. *See* 742 F.2d at 1399 n. 6. Nonetheless, it seems clear that in such actions, the controversy must continue throughout. Indeed, in *International Medical Prosthetics,* the Federal Circuit noted that it is a declaratory plaintiff's burden to "establish that jurisdiction existed at, and has continued since, the time the complaint was filed." 787 F.2d at 575. "To meet that burden, [plaintiff] must establish the 'existence of facts underlying' an allegation that an 'actual controversy' existed." *Id.* at 575–76 (quoting *Jervis B. Webb,* 742 F.2d at 1399).

In *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), the Supreme Court reiterated the requirement that a case or controversy exist at all stages of review before judicial power is exercised.

The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. As the Court noted in *North Carolina v. Rice,* 404 U.S. 244, 246 [92 S.Ct. 402, 404, 30 L.Ed.2d 413] (1971), a federal court has neither the power to render advisory opinions nor "to decide questions that cannot affect the rights of litigants in the case before them." Its judgments must resolve " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Ibid.,* quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 [57 S.Ct. 461, 464, 81 L.Ed. 617] (1937). As the Court noted last Term, in an opinion by Mr. Justice

27. Likewise, Akzona intimates that this lawsuit has advanced to a stage wherein dismissal would be manifestly unfair. But that result is dictated by the issuance of the ITC Order in keeping with Congressional and Presidential trade policy expressed in the procedures set forth in the Tariff Act in addition to the mandate of the Declaratory Judgment Act. Further, should Akzona once again challenge DuPont's patents after the expiration of the ITC's exclusion order, much of the discovery conducted already may remain relevant.

Brennan, *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 [94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505] (1974): "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. See, *e.g., Roe v. Wade*, 410 U.S. [113,] 125 [93 S.Ct. 705, 712–713, 35 L.Ed.2d 147 (1973)]; *SEC v. Medical Comm. for Human Rights*, 404 U.S. 403 [92 S.Ct. 577, 30 L.Ed.2d 560] (1972); *United States v. Munsingwear, Inc.*, 340 U.S. 36 [71 S.Ct. 104, 95 L.Ed. 36] (1950)."

In *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270 [61 S.Ct. 510, 85 L.Ed. 826] (1941), this Court, noting the difficulty in fashioning a precise test of universal application for determining whether a request for declaratory relief had become moot, held that, basically, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Id.* at 273 [61 S.Ct., at 512] (emphasis supplied).

*Id.* at 401–02, 95 S.Ct. at 2334, *quoted in C. Van Der Lely N.V. v. F.lli Maschio S.n.c.*, 561 F.Supp. 16, 22 (S.D.Ohio 1982), *aff'd*, 748 F.2d 1568 (Fed.Cir.1984).

Under all of the circumstances herein present, this Court cannot conclude that an actual controversy between parties with adverse legal interests of sufficient immediacy and reality currently exists.

### C. Discretion Under Declaratory Judgment Act

Declaratory judgments are remedies committed to the sound discretion of the Court. *Mechling Barge Lines v. U.S.*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961), *noted in C. Van Der Lely*, 561 F.Supp. at 25; *Procter & Gamble*, 109 F.R.D. at 675 (noting *Interdynamics*, 698 F.2d 157; *Bituminous Coal Operators' v. International U.*, 585 F.2d 586, 596 (3d Cir.1978)). Such jurisdiction is discretionary "even when a justiciable controversy has been

shown to exist." *C. Van Der Lely*, 561 F.Supp. at 25 (noting *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir.1980) (other citations omitted)). "If the Court is of the opinion that the action will not serve a useful purpose, or that it is otherwise undesirable, then it should refuse to proceed." 6A J. Moore, *supra,* ¶ 57.20 (2d ed. 1979) *quoted in C. Van Der Lely*, 561 F.Supp. at 25.

■ Two criteria are generally used in determining whether a court should exercise its discretion to issue a declaratory judgment: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) whether the judgment will terminate and afford relief from uncertainty, insecurity and controversy giving rise to the proceeding. *C. Van Der Lely*, 561 F.Supp. at 25 (citations omitted); *see Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986); *Aetna Cas. & Sur. Co. v. Rasa Management Co., Inc.*, 621 F.Supp. 892, 894–94 (D.Nev.1985).

■ In this instance, no useful purpose could be served by a declaratory judgment. Akzona would still be required to await the expiration of the ITC Order before importing aramid fibers. Further, with the ITC Order in place, it is not altogether certain that a judgment by this Court would terminate and afford relief from uncertainty. Certainly, the time restraints inherent in this particular situation indicate the opposite is more probable.

### II. COUNTERCLAIM

Akzona argues that DuPont's counterclaim for infringement of the patents-in-suit and for money damages creates an independent basis for jurisdiction. As such, even if there is no immediate potential for future infringement, DuPont has "pleaded a justiciable controversy as to past infringement continuing as of the date of the complaint and thereafter into the future." *See* D.I. 175 at 14–15. In short, Akzona asserts that because DuPont has indicated no willingness to dismiss its coun-

terclaim with prejudice [28] and further, since the litigation is nearly four years old, it would be fundamentally unfair to permit DuPont to withdraw its infringement claim now while remaining free to reassert it at any future time within the statute of limitations. *Id.* Akzona urges the Court to view DuPont's action in light of Rule 41 of the Federal Rules of Civil Procedure as an attempted "voluntary" dismissal.

DuPont counters that under Rule 13(a) of the Federal Rules of Civil Procedure, its counterclaim is compulsory. Therefore, it should be dismissed automatically along with the declaratory judgment action. The counterclaim asserts in relevant part that Declaratory Plaintiffs "have been and presently are willfully infringing the aforesaid United States letters patent by manufacture, use and sale of aramid fibers...." D.I. 13 at ¶ 55. Rule 13(a) defines as compulsory a counterclaim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties...." Fed.R.Civ.P. 13(a).[29] In the instant case, both the declaratory judgment action and the counterclaim arise out of the same patents and both seek to define the scope and determine the validity of those patents. Such a situation is clearly within the mandate of Rule 13(a). *See* 6 C. Wright & A. Miller § 1410.

Yet, the issue is not resolved by simply labeling the counterclaim as compulsory or permissive. The real question is "the nature of the jurisdiction supporting the counterclaim, whether compulsory or permissive. Where jurisdiction is merely ancillary, the Court has discretion to dismiss if the original claim supporting it is disposed of. But where ... jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim...." *National Research Bureau, Inc. v. Bartholomew,* 482 F.2d 386, 389 (3d Cir.1973); *see Rengo Co. Ltd. v. Molins Mach. Co.,* 657 F.2d 535, 539–40 and n. 4 (3d Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 600, 70 L.Ed.2d 591 (1981); *Burns,* 481 F.Supp. at 848; *cf., Faygo Beverages, Inc. v. Pioneer Trucking,* 585 F.Supp. 251, 255–56 (D.Del.1984); 6 C. Wright & A. Miller § 1414.

If there were no independent basis for federal jurisdiction over DuPont's counterclaim, it would be dismissed along with the complaint for want of federal jurisdiction. *See Burns,* 481 F.Supp. at 848; *cf. Faygo Beverages,* 585 F.Supp. at 255–56; 6 C. Wright & A. Miller § 1414. Akzona argues that, at the very least, there is jurisdiction under 35 U.S.C. § 271(a) because fibers were imported into the United States prior to the ITC's exclusion order. "[I]t is undisputed here that a case or controversy existed at the time this action was brought. In contrast to the prior case before Judge Schwartz, DuPont did not contest jurisdiction here, but rather filed its compulsory counterclaim.... DuPont obviously recognized that jurisdictional facts were present." D.I. 221 at 1.

In point of fact, declaratory judgment jurisdiction and infringement jurisdiction are somewhat different. For a declaratory plaintiff to establish the requisite controversy, it must meet the test of *Jervis B. Webb* and, in the case of a foreign entity, establish that its product will potentially infringe in the United States. This evidence must show a desire to "plunge in" to the American market rather than mere

---

**28.** Akzona also makes a procedural argument that DuPont has not offered to dismiss the counterclaim *with or without* prejudice. DuPont's motion papers seek dismissal of "this action." *See* D.I. 167. The clear import of the motion is that DuPont seeks dismissal of the entire action. At argument, counsel for DuPont represented that the counterclaim should be dismissed without prejudice. D.I. 182 at 12.

**29.** Compulsory counterclaims are viewed as falling within the ancillary jurisdiction of the court.

*See Moore v. N.Y. Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Great Lakes Rubber Corporation v. Herbert Cooper Co.,* 286 F.2d 631, 633–34 (3d Cir.1961); *Burns v. Rockwood Distributing Co.,* 481 F.Supp. 841, 848 n. 13 (N.D.Ill.1979). Permissive counterclaims, however, require an independent basis of jurisdiction to withstand dismissal. *See Burns,* 481 F.Supp. at 848 n. 13 (noting *Jones v. Sonny Gerber Auto Sales,* 71 F.R.D. 695 (D.Neb.1976)).

testing of uncharted commercial waters. Conversely, a minimal amount of infringing product shipped to the United States will trigger potential liability under section 271(a). Judge Schwartz found in 1981 that Enka had imported some 640 pounds of fibers from 1976 to 1981. *Enka*, 519 F.Supp. at 370. While that amount was insufficient to support a finding of actual controversy under the Declaratory Judgment Act, it does indicate actual direct infringement within the United States.[30]

The question presented is novel. An intervening event has removed the immediate controversy between the parties. DuPont, having filed a counterclaim for infringement, seeks dismissal of the counterclaim on the same ground. Akzona contends that "under overwhelming decisional law, the jurisdiction of this Court, having once properly attached, cannot be ousted with respect to patent validity, even if there were a complete mooting of the infringement issue." D.I. 221 at 1–2.

In a typical case where the patentee institutes an action for infringement and the alleged infringer counterclaims that the patent is invalid and unenforceable and/or noninfringed, courts will allow the action to go forward on the counterclaim even if the patentee voluntarily dismisses the charge of infringement or stipulates to noninfringement. 5 D. Chisum, *Patents* ¶ 21.02[1][d][ii][C]; *see Rengo*, 657 F.2d at 538–39; *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.*, 488 F.2d 382, 390 (1st Cir.1973); *Hawley Products Company v. United States Trunk Co.*, 259 F.2d 69, 74–76 (1st Cir.1958); *see also Shelcore, Inc. v. Durham Industries, Inc.*, 745 F.2d 621, 624 (Fed.Cir.1984)[31]; *Blackman v. Hadron, Inc.*, 450 F.2d 781, 782–83 (2d Cir. 1971). Additionally, in the related instance where an alleged infringer files a declaratory judgment action and the patentee counter-claims for infringement, this Court has held that the patentee could not belatedly withdraw the issue of validity by entering into a "concession of noninfringement." *Phillips Petroleum Co. v. Shell Development Co.*, 6 F.R.D. 406, 407–08 (D.Del. 1947).

Courts generally articulate three bases for going forward on the counterclaim (or complaint) and determining validity. First, the court's jurisdiction is determined as of the complaint's filing. Thus, even if infringement is no longer an issue, a declaratory judgment counterclaim technically remains, so long as the requirements for maintaining such an action are met. *See* 5 D. Chisum, ¶ 21.02[1][d][ii][C]. Second, and most important, there is a clear public interest in determining a patent's validity. *See Hawley Products*, 259 F.2d at 75 (noting *Sinclair v. Interchemical Corp.*, 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 (1945)).[32] The public has a greater interest in ridding the art of an invalid patent than in a determination that any given product or process is infringing a patent. Declaratory judgment actions allow the potential infringer to garner a decision before committing substantial resources to directly infringe the patent. If patentees were permitted to variously threaten legal action and then unilaterally withdraw the issue of infringement in order to defeat the court's jurisdiction, invalid patents would be insulated from judicial scrutiny. Third, products may change and markets may evolve such that charges of infringement may once again be leveled in the future, drawing the parties into yet another confrontation. *See* 5 D. Chisum, ¶ 21.02[1][d][ii][C].

In the instant case, as noted *supra*, a novel situation has arisen. Akzona seeks a declaratory judgment of invalidity

---

**30.** The record of the proceedings before the ALJ presents further proof that Akzona had some market presence in the United States from 1981 until the exclusion order.

**31.** In *Shelcore,* the Federal Circuit opined, "By voluntarily dismissing with prejudice claim 13 of the '831 utility patent, Shelcore removed the issue of infringement of claim 13 from the trial court's consideration. But Shelcore could not unilaterally remove the validity issue because Durham's counterclaim put validity of all the claims in issue." 745 F.2d at 624.

**32.** In *Altvater v. Freeman,* 319 U.S. at 363–64, 63 S.Ct. at 1117–1118, the Supreme Court held that a decision of noninfringement does not dispose of a counterclaim for invalidity.

and unenforceability. There is no longer a justiciable controversy regarding that action. Nonetheless, despite the presence of the ITC Order which bars the present importation of potentially infringing fibers, Akzona did import such fibers prior to 1986. Indeed, DuPont must concede that as of 1983 there was subject matter jurisdiction over DuPont's counterclaim. Under 35 U.S.C. § 271(a), the alleged infringement did take place within the United States. As such, DuPont's counterclaim has an independent jurisdictional basis as to events occurring prior to the ITC Order. Akzona implicitly urges the Court to draw a distinction between the period prior to the ITC Order and that after it. As to the former, which is supported by an independent jurisdictional basis, Akzona argues that Rule 41 of the Federal Rules of Civil Procedure applies because DuPont is, in effect, seeking to voluntarily withdraw its counterclaim.[33]

As a practical matter, Akzona's contentions reach a contrived result, in effect allowing the tail to wag the dog. All of the cases cited by Akzona involve the situation where the patentee seeks to voluntarily withdraw the charge of infringement in order to avoid an inquiry into validity. In this instance, the original declaratory judgment action no longer remains. Whatever the commercial and legal skirmishes between these two parties throughout the world, DuPont did not institute this lawsuit. In order to preserve its rights, it was forced to file a counterclaim. Apparently, DuPont opted to litigate the issue because it did not move for dismissal for want of subject matter jurisdiction prior to its answer and counterclaim. Nonetheless, the present procedural posture is such that no direct infringement can occur for over three years. Akzona has presented no evidence of its ability to contributorily infringe or induce infringement through downstream customers.

Contrary to the cases cited by Akzona, an intervening event has destroyed the immediacy of the actual controversy. Rather than seeking to withdraw its patent from litigation to defeat jurisdiction, DuPont is attempting to avoid a challenge supported by a procedural technicality. Unlike *Shelcore*, in effect, validity is not at issue. If DuPont were forced to remain in court, Akzona would simply counterclaim, thus raising the issue of validity through the back door. At argument, counsel for DuPont represented that "DuPont undertakes that it will not sue the plaintiffs for any damages for infringement that have taken place before the ITC Order was entered, so that there is no controversy now or ever with respect to that." D.I. 182 at 12.[34]

Two cases are elucidating. In *Phillips, supra*, the patentee sought to withdraw the issue of infringement by a "concession of noninfringement." In effect, the defendant sought to "remove the actual and justiciable controversy and to defeat the continued jurisdiction of this court by stating that the counterclaim alleging infringement should be 'dismissed with prejudice on the issue of infringement.'" *Id.* at 408. In short, the patentee sought to throw a roadblock in front of the alleged infringer's lawsuit via a two-step argument. First, it sought to withdraw the infringement issue by voluntarily conceding that the patent was not infringed. Second, it sought a ruling that the issue of validity was mooted by withdrawal of the infringement issue. There is no doubt that the actual controversy remained fully alive but for the patentee's belated absolution of declaratory plaintiff. But, as Judge Rodney noted, "[i]t is too late in the history and development of patent law to question the fact that both public interests and public policy

---

**33.** Rule 41 provides in relevant part: "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed.R.Civ.P. 41(a)(2).

"The provisions of this rule apply to the dismissal of any counterclaim...." Fed.R.Civ.P. 41(c).

**34.** Akzona indicated in its brief that its opposition to DuPont's motion could be reconsidered if DuPont agreed to dismiss its counterclaim with prejudice *and* covenanted not to sue or threaten to sue any customer of Akzona or user of Twaron. D.I. 175 at 31. Akzona also prays for attorneys' fees incurred in defense of the counterclaim.

are involved in the question as to the validity or invalidity of patents when such questions are directly presented." *Id.* at 408–09.

Conversely, in the instant case, DuPont is effectively seeking to withdraw the infringement counterclaim *after* the dissolution of the justiciable controversy. Contrary to Akzona's pronouncements, DuPont is not unilaterally withdrawing the infringement issue. Rather, DuPont is arguing that, in light of the lack of an actual controversy and the ITC Order, Akzona would be able to do indirectly what it could not do directly, that is, contest the validity of the patent under a declaratory judgment.

In point of fact, the situation presented is somewhat analagous to that which arose in *International Video Corp. v. Ampex Corp.*, 169 U.S.P.Q. 83 (N.D.Cal.1971), *aff'd*, 484 F.2d 634 (9th Cir.1973). Plaintiff sought a declaratory judgment that it was not infringing defendant's patent. Defendant moved to dismiss arguing that there was no justiciable controversy. The District Court denied the motion and defendant "reluctantly" filed a counterclaim. The counterclaim made clear that defendant did not waive its contention that no actual controversy existed. One year later, claiming that its position had changed completely, plaintiff moved to dismiss for lack of a justiciable controversy. The court dismissed the complaint with prejudice and the counterclaim without prejudice. 169 U.S.P.Q. at 84. Defendant appealed arguing that its counterclaim was not properly dismissed and, in effect, asserting that federal patent jurisdiction provided an independent basis of jurisdiction.[35]

In affirming, the Ninth Circuit concluded that Rule 41 was inapplicable because the dismissals were for want of jurisdiction.

**35.** It is not clear from either the District Court or the Ninth Circuit opinion whether there was infringing activity prior to the change in circumstances.

**36.** The Ninth Circuit noted that:

[t]he counterclaim was filed ... because it might be considered a compulsory counterclaim which Ampex could lose forever if not then asserted. A comparison of the International complaint for declaratory judgment

As such, defendant's argument failed because it "ignore[d] the crucial threshold question—whether a justiciable controversy exists—underlying the court's orders of dismissal. If there is no controversy, there is no jurisdiction in a constitutional sense regardless of whether statutory jurisdiction might otherwise be properly founded." 484 F.2d at 636 [36]. Merely filing the counterclaim did not establish a justiciable controversy where none previously existed. *Id.; see generally Western Dairy Products v. Griffith Laboratories*, 177 U.S.P.Q. 677, 678–79 (N.D.Cal.1973) (declaratory complaint and counterclaim dismissed with prejudice for lack of a justiciable controversy when allegedly infringing production ceased and no evidence of intent to resume production in the future.)

While the case *sub judice* is not on all fours with *International Video*, there are parallels. No justiciable controversy remains with respect to the declaratory judgment action. The patent which forms the basis for the ITC Order is not before this Court. DuPont, on the record, has absolved Akzona of liability for money damages for past infringement. Any concern over downstream liability is mitigated by Akzona's failure to produce evidence of potentially infringing customers.

At argument, DuPont indicated that its counterclaim should be dismissed without prejudice. Inasmuch as counsel asserted that DuPont would not sue for infringement that took place prior to the ITC Order, the cause is dismissed with prejudice. Should Akzona reinstitute this action after 1990, DuPont would be free to counterclaim for infringement for the period subsequent to the ITC Order.

**CONCLUSION**

Under the Constitution and the Declaratory Judgment Act, an actual controversy

with the Ampex counterclaim for patent infringement convinces us that identical issues are involved in each. We do not quite understand how one can be dismissed for want of a justiciable controversy without the dismissal of the other. Both dismissals are required because the court has no jurisdiction to adjudicate unless there is an actual controversy. *Id.*

must exist before a court can proceed to adjudicate a cause of action. In patent cases, this requirement dictates that the declaratory plaintiff must have a reasonable apprehension of being sued by the patentee *and* the present intent and ability to undertake business that will potentially infringe the patentee's claims. For a foreign declaratory plaintiff, there is the additional requirement that the potentially infringing activity take place within the United States.

While Akzona clearly has a reasonable apprehension of suit by DuPont, it has not demonstrated a present intent and ability to enter the United States market either directly or through its customers. Even if Akzona was importing potentially infringing fiber prior to the ITC Order in quantities sufficient to constitute an actual controversy, it is now precluded from importing fiber made under a process covered by the '756 patent. Further, Akzona could point to no customers who were presently importing products containing potentially infringing fibers. As such, there is no actual controversy. Likewise, the action cannot go forward on DuPont's counterclaim because there is no present direct infringement as a result of the ITC Order and DuPont has indicated that it has no desire to pursue the nominal damages resulting from past infringement. Further, Akzona has produced no evidence to indicate that any customers either now or soon would face liability for contributory infringement.

Simply put, the Court concludes that under all the circumstances, there is not a substantial controversy of sufficient immediacy and reality to warrant the exercise of declaratory judgment jurisdiction. As in 1981, "[p]laintiffs have not shown a genuine stake in the American market that would vest in them the right to compete free of constraint by invalid patents." *Enka,* 519 F.Supp. at 372.