The **PROCTER & GAMBLE COMPANY, Plaintiff,**

v.

**NABISCO BRANDS, INC., Keebler Company and Frito-Lay, Inc., Defendants.**

**Civ. A. No. 84–333.**

United States District Court, D. Delaware.

March 28, 1986.

See also, D.C., 604 F.Supp. 1485.

Robert H. Richards, III (argued) and Robert W. Whetzel, of Richards, Layton & Finger, Wilmington, Del. (Jerome G. Lee (argued), Harry C. Marcus (argued), John F. Sweeney, and Christopher A. Hughes, of Morgan, Finnegan, Pine, Foley & Lee, New York City, Julius P. Filcik, Rose Ann Dabek, and Richard C. Witte, of Procter & Gamble, Cincinnati, Ohio, of counsel), for plaintiff The Procter & Gamble Co.

Mary B. Graham, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul Heller (argued) of Kenyon & Kenyon, New York City, of counsel), for defendant Nabisco Brands, Inc.

Howard M. Handelman (argued) of Bayard, Handelman & Murdoch, Wilmington, Del. (Daniel M. Riess (argued) of Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., William Glendon, of Roger & Wells, New York City, Craig S. Stevens, of Keebler Co., Elmhurst, Ill., of counsel), for defendant Keebler Co.

James F. Burnett, of Potter, Anderson & Corroon, Wilmington, Del. (Wayne Harding (argued) and Peter J. Shurn, II (argued) of Arnold, White & Durkee, Houston, Tex., Terrence D. Dreyer, of Frito-Lay, Inc., Dallas, Tex., of counsel), for defendant Frito-Lay, Inc.

## OPINION

LONGOBARDI, District Judge.

The Procter & Gamble Company ("P & G") has sued Nabisco Brands, Inc. ("Nabisco"), Keebler Company ("Keebler") and Frito-Lay, Inc. ("Frito-Lay") for infringing its U.S. Patent No. 4,455,333 ("'333"). The patent covers so called dual-textured cookies, that is, cookies that are crispy on the outside and chewy on the inside. The various textures are created by the use of sugars that possess different crystallization properties. Patent '333 was issued on June 19, 1984. After this litigation commenced, P & G was issued U.S. Patent No. 4,503,080 ("'080") on March 5, 1985. Generally speaking, it can be assumed for the purposes of this argument that patent '080 is a continuation in part of patent '333 and relates to "sugar crystallization inhibitors."

The Defendants contend that they are apprehensive P & G will sue them for infringing patent '080 because the two patents are so interrelated that infringement of one would necessarily amount to infringement of the other. As a result, Defendants seek in this motion to amend their answers to add a counterclaim for declaratory judgment that patent '080 is invalid and unenforceable. Defendants have al-

ready alleged in their pleadings that patent '333 is invalid and unenforceable.

Almost as an aside, the Defendants request that the declaratory judgment include their attack against P & G's U.S. Patent 4,344,969 (" '969") which was issued on August 17, 1982 and refers to the use of enzymes as a sugar crystallization inhibitor. Additionally, the Defendants contend that they have uncovered facts which indicate that P & G has engaged in conduct which renders patents '333, '080 and '969 invalid and unenforceable because of violations by Plaintiff of its uncompromising duty of candor to the Patent Office in its applications for those patents. In particular, the Defendants seek to demonstrate that P & G's series of alleged violations demonstrate a continuing scheme or plan to deceive the U.S. Patent and Trademark Office ("PTO") and to improperly exclude its competitors from the dual-textured cookie market.

■ Leave to amend the pleadings is usually freely given. Fed.R.Civ.P. 15(a). One authority has even suggested that Rule 15 "encourages the Court to look favorably on requests to amend." 6 C. Wright & F. Miller, Federal Practice and Procedure § 1484 at 417 (1971). In the case of amendments that seek to add declaratory judgment actions, however, the liberal approach of utilizing Rule 15 must be tempered by a careful analysis to determine whether a jurisdictional basis for the amendment exists. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Cutaiar v. Marshall*, 590 F.2d 523 (3d Cir.1979). Even then, the allowance of a declaratory judgment action rests in the sound discretion of the Court. *Interdynamics, Inc. v. Wolf*, 698 F.2d 157 (3d Cir.1982); *Bituminous Coal Operators' v. International U.*, 585 F.2d 586, 596 (3d Cir.1978)

■ In a patent case, the test that a Court should apply in determining whether to allow declaratory relief has been stated in different ways by different courts. The essence of the formulation, however, is that (1) the plaintiff must have a reasonable apprehension that it will face an infringement suit if it continues the conduct in question, and (2) the plaintiff must have the present intention and ability to produce the process or object that would be the subject of the infringement suit. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir.1980).

Considering the second element first, the parties would not hesitate to agree that each of them has the ability to produce multi-textured cookies. Indeed, Frito-Lay and Nabisco are testing such cookies. Whether the parties intend to produce such cookies, however, is at least one of the critical issues in this case. In order to resolve this issue, it is necessary that each of the Defendants' situation be examined separately.

## A. FRITO–LAY

■ In Defendants' joint brief filed on April 19, 1985, Docket Item ("D.I.") 100, it is alleged that "at least Frito-Lay has ongoing development work to improve its cookie product lines. Some of the new cookies under development[1] for future marketing are multiple texture." D.I. 100, p. 14. The generalized statement is corroborated by the affidavit of one Patrick McClusky, a research scientist for Frito-Lay who says that he has made "multiple texture cookies[2] having formulations which provide the outer regions with crispier texture than the inner regions. At the conclusion of the age tests, we intend immediately to conduct public consumer tests on these multiple texture cookies." D.I. 105, Ex. 3, p. 2. At first blush, one might hastily conclude that Frito-Lay has satisfied the "intention and capability" element. But close scrutiny of the affidavit discloses its serious deficiencies.

1. It is assumed the reference is still to Frito-Lay.

2. This is in reference to new prototype cookies and is not to be confused with the cookies that are the subject matter of the infringement suit under patent '333.

The difficulty the Court has with this affidavit are the cryptic conclusions stated by the affiant. For instance, in paragraph 6(1), the affiant does not discuss what the slight variations are or how these changes by Frito-Lay in its product formulations might infringe patent '080. In paragraph 6(2), discussing the "new prototype" cookie formulations that are undergoing age testing and will thereafter be public consumer tested, the affiant does not provide the Court with any information on how or why the prototype cookies might infringe patent '080. The Court has no basis to conclude, consequently, that there exists some colorable claim to a present intention and capability to produce a cookie that would infringe patent '080. The bald statement of apprehension is not enough. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed.Cir.1984).

## B. NABISCO

Nabisco has manufactured "many thousands" of cookies containing glycerin, sorbitol and polysaccharides. Affidavit of Robert E. Ross, D.I. 107, Ex. 193. Some of these cookies are now in storage apparently for age testing and many others were distributed to the public in, as stated in the affidavit, "a" performance test. D.I. 107, Ex. 1, ¶ 3. Paragraph 4 of Exhibit 1 is either very artfully drawn or inartistic but, whatever, one cannot determine whether the manufacture and testing occurred before or after the issuance of patent '080. What is absolutely clear is that there is no present intention (expressed by affidavit or other formal document of record) to produce, test or market these same cookies.[3] If the cookies were manufactured and tested before the issuance of patent '080, then there can be no legitimate claim that the "intention and capability to produce" ele-

ment was directed against patent '080. On the other hand, if they were produced and tested after the issuance of patent '080, then an infringement of '080 would have occurred. But the Court does not have that information. It was not produced by the moving party. In its stead was Ross's affidavit, Exhibit 1 to D.I. 107. But for the disposition of Nabisco's motion on other grounds, to be discussed hereafter, it must be concluded that Nabisco, the moving party in a contested jurisdictional claim, would not have carried its burden of proof. *Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir.1979).

## C. KEEBLER

Keebler alleges that it has the present intention and capability to produce cookies that would infringe patent '080. Keebler contends that patent '080 is just a continuation of patent '333 and that some of the very broad claims of '080 could very well apply to its present line of commercially produced cookies.[4] The Plaintiff contends that patent '080 is related only to nonsugar ingredients which inhibit sugar crystallization and that Keebler's products do not fall within its claims. Also, Plaintiff asserts that patent '969 is not involved since Keebler does not use enzymes to inhibit crystallization. P & G Answering Brief, D.I. 102, p. 9. There is a dispute. The dispute goes directly to the question of contested jurisdiction and Keebler has presented nothing in the form of affidavits or otherwise to carry its burden of proof. The Court is not concerned about deciding finally the substantive clauses of the '080 patent but the Plaintiff must at least at this stage present enough evidence to show a colorable claim that the '080 patent is applicable.[5]

---

**3.** Nabisco's claim that '080 may have been infringed is based solely on the cookies referred to in the Ross affidavit. D.I. 107, Ex. 1. *See* Nabisco's Brief, D.I. 107, p. 4, last paragraph.

**4.** It is alleged, for instance, that claim 1 of '080 calls for "a sugar crystallization inhibitor." Keebler contends that this term includes the use of at least dextrose and fructose which are sugar crystallization inhibitors and that Keebler's

commercially produced cookies containing those sugars might infringe patent '080.

**5.** The problem confronting the Court is that claim 3 of patent '080 suggests that the crystallization inhibitor be a food compatible polyol. Claim 4 suggests the polyol be from among sugar esters, sugar alcohols, sugar polymers, glycols, polyglycerols, polyglycerol esters and starch hydrolysates. Are all of the items in

### Apprehension

Plaintiff argues that the Court should deny Defendants' motion to add the declaratory judgment claim because the Defendants could not possibly have a genuine apprehension of being charged with infringing patent '080. The basis for such a contention is Plaintiff's letter dated April 29, 1985 which states "that Procter & Gamble will not assert any claims of U.S. Patent Nos. 4,344,969 or 4,503,080 against any existing or past commercial products or processes of Nabisco, Keebler or Frito-Lay." September 27, 1985 Hearing Transcript, p. 30.

The Defendants counter that:

1. the letter addresses only the parties "commercial" activities which necessarily leaves them with a genuine apprehension of litigation over their consumer testing of new cookies, D.I. 106, p. 6; D.I. 107, p. 4; D.I. 105, p. 10;

2. the letter clearly does not vitiate the justiciable controversy as to inducement to infringe and the possible infringement claims against their respective supermarket customers, D.I. 105, p. 9; D.I. 106, p. 6;

3. the breadth of patent '080 is such that any purported violation of patent '333 is necessarily an accusation that the product infringes patent '080, D.I. 100, pp. 10–13;

4. the letter does not state that P & G will not assert the patent against all present and imminently foreseeable products and processes of Defendants, D.I. 105, p. 9; and

5. promises not to sue like this one have no value, citing *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed.Cir.1983), D.I. 106, p. 6.

On May 7, 1985, Mr. Marcus told Nabisco that "P & G will not assert its '080 patent against the experimental activities of Na-

bisco Company involving the use of glycerin, sorbitol, starch hydrolysates or alginate." [6] September 27, 1985 Hearing Transcript, p. 31.

Of the Defendants' preceding arguments, items 3 and 4 can be dismissed out of hand. In item 3, for instance, the claim is without substance if the promise not to sue covers all present and past activities.

Item 4 is in the same category. To argue that Defendants are not guaranteed freedom from infringement claims against "imminently foreseeable products" must be considered somewhat disingenuous. P & G can hardly be asked to promise not to sue for cookies that have not yet been produced nor even described.

To describe P & G's actions as merely ploys paints with too broad a brush. Indeed, P & G made an effort to meet each of the arguments of counsel for the Defendants. In what must be described as the penultimate act of absolution for commercial sinning, *i.e.*, infringement, P & G beneficiently intoned: "Well, I hereby give their customers absolution as to any of the products referred to by Mr. Sweeney and Mr. Marcus. They have our absolution as to their customers." September 27, 1985 Hearing Transcript, p. 33.

Going even further as to future sales of the cookies that have been made and might be sold or market tested in the future, P & G said, "I hereby give them absolution as to that." September 27, 1985 Hearing Transcript, p. 33.

Taken together with previous written proposals, the promises not to sue are extremely comprehensive. In general, they cover past and presently produced cookies which are obviously covered by patent '080, or might constructively be considered as such because of the breadth of the patent. They cover the testing of those cookies, the

claim 4 a polyol? Are all of the items in claim 4 through 9 nonsugar, sugar crystallization inhibitors? Without some basis in the record, the Court would be remiss in assuming such knowledge or for even assuming an independent search to resolve the issue. The judicial decision requires a basis in the record. *Grafon*

*Corp. v. Hausermann*, 602 F.2d 781 (7th Cir. 1979).

**6.** As previously noted, Nabisco produced cookies which might have infringed patent '080 and may test them in the future. See p. 676, *supra*.

test marketing and indeed the commercial marketing of those cookies. The promises even extend to Defendants' concerns regarding their apprehension of suit for inducement of infringement. Further, the promises extend to preclude any suits brought by P & G against the Defendants' customers. To suggest that such proposals should be ignored flies in the face of this Court's efforts, indeed the efforts of the judiciary generally, to confine litigation to issues that will resolve all the differences between the parties in as economically resourceful way as the interests of justice will allow.

Of course, this is not to say that the realities of the business world are being ignored. The parties are engaged in a tremendous battle for the dual-textured cookie market and it will not easily go away or be resolved. But when issues can be refined and narrowed, when stipulations can curtail the scope of the controversy, it would be foolhardy to ignore the opportunity to restrict the inquiry from one of more than forty-two claims to one of seven claims. More importantly, with promises such as those given here, formally recorded in legally binding agreements meeting the fears of the Defendants, the Defendants cannot be heard to say they have a legitimate apprehension of being sued. And these promises are easily distinguished from those not approved in *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, the principal difference being that in the *Schwartz* case there was no promise not to sue in the future.

In light of the foregoing, the motion of the Defendants is denied except for those amendments which supplement the existing affirmative defenses against patent '333.[7] The motions to supplement the affirmative defenses to cover "unlawful conduct" in acquiring patents '333, '080 and '969 and of unclean hands in acquiring those patents are denied. The Defendants are not prejudiced since those defenses are now applica-

ble to the existing controversy on patent '333.

The promise not to sue currently consists only of attorney correspondence and statements made by counsel at the September 27, 1985 hearing. The parties are directed to formalize the promises as a written stipulation in a form satisfactory to all.

---

7. These motions are described in "block" number 6 on the chart prepared by P & G for oral

argument on September 27, 1985 and which was presented in open Court that day.