The **PROCTER & GAMBLE COMPANY, Plaintiff,**

v.

**NABISCO BRANDS, INC., Keebler Company and Frito-Lay, Inc., Defendants.**

**Civ. A. No. 84-333 LON.**

United States District Court, D. Delaware.

Oct. 21, 1988.

Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del. (Jerome G. Lee, Harry C. Marcus, John F. Sweeney and Christopher A. Hughes of Morgan & Finnegan, New York City, Julius P. Filcik, Rose Ann Dabek and Richard C. Witte of Procter & Gamble Co., Cincinnati, Ohio, of counsel), for plaintiff Procter & Gamble Co.

Mary B. Graham of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul Heller, Edward W. Greason and Walter Scott of Kenyon & Kenyon, New York City, of counsel), for defendant Nabisco Brands, Inc.

Howard M. Handelman of Bayard, Handelman & Murdoch, Wilmington, Del. (Daniel M. Riess of Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., William Glendon of Roger & Wells, New York City, Craig S. Stevens of Keebler Co., Elmhurst, Ill., of counsel), for defendant Keebler Co.

James F. Burnett and Donald J. Wolfe, Jr. of Potter, Anderson & Corroon, Wilmington, Del. (Wayne M. Harding, Thomas A. Miller and John E. Schneider of Arnold, White & Durkee, Houston, Tex., Ronald R. Kranzow and Terrence D. Dreyer of Frito-Lay, Inc., Dallas, Tex., of counsel), for defendant Frito-Lay, Inc.

## OPINION

LONGOBARDI, District Judge.

An initial examination of this motion and all the related briefs and correspondence may leave one overwhelmed by the seeming complexity of the matters involved. Upon closer analysis, however, the reader can peel away the layers of empty verbiage and expose the gravamen of the issue. Once done, the jumble of conclusory statements tumbles like a house of cards.

This motion involves three patents owned by Plaintiff The Procter & Gamble Company ("P & G"): U.S. Patents Nos. 4,344,969 ("'969"), 4,455,333 ("'333") and 4,503,080 ("'080"). Patent '969 was issued on August 17, 1982, patent '333 on June 14, 1984, and patent '080 on March 5, 1985. All three patents are related to the manufacture of dual-textured cookies that are crispy on the outside and chewy on the inside. The linchpin of each patent is the use of a crystallization inhibitor that prevents the sugar in the middle of the cookie from hardening, thereby maintaining a chewy center. The '969 patent teaches the use of one type of dough containing sucrose and an enzyme that prevents the sugar on the inside of the cookie from crystallizing. The '333 patent describes the use of two types of dough, one with regular crystallizing sugar for the outside of the cookie (for a crispy crust) and one with a crystallization-resistant sugar on the inside (for a chewy center). The '080 patent teaches the use of two types of dough, but involves the use of nonsugar, and perhaps sugar, crystallization inhibitors.[1]

P & G has sued Nabisco Brands, Inc. ("Nabisco"), Keebler Company ("Keebler") and Frito–Lay, Inc. ("Frito–Lay") for alleged infringement of patent '333. P & G does not, and will not, claim infringement of patent '969 or patent '080.[2] Each Defendant, in its answer to P & G's amended complaint, has asserted through counterclaims and/or as an affirmative defense that alleged inequitable conduct by P & G in obtaining patent '969 and patent '080 renders patent '333 unenforceable or is, at least, relevant to establishing the unenforceability of patent '333.[3] In this motion, P & G asks the Court to strike those affirmative defenses and dismiss the counterclaims.

In *The Procter & Gamble Co. v. Nabisco Brands, Inc.*, 109 F.R.D. 673 (D.Del.1986), this Court held that Defendants could not amend their answers to assert a counterclaim for a declaratory judgment that patents '969 and '080 were invalid and unenforceable.[4] The Court stated:

> In light of the foregoing, the motion of the Defendants is denied except for those amendments which supplement the existing affirmative defense against patent '333. The motions to supplement the affirmative defenses to cover "unlawful conduct" in acquiring patents '333, '808 and '969 and of unclean hands in acquiring those patents are denied. The Defendants are not prejudiced since those defenses are now applicable to the existing controversy on patent '333.

*Id.* at 678 (footnote omitted). With the phrase "those defenses", the Court was referring to the affirmative defenses against patent '333. The Court's point was that the opinion did not affect any of Defendants' preexisting affirmative defenses against '333; the Court was *not* saying that the door was open for Defendants to use allegations concerning patent '969 or patent '080 as a defense against P & G's claims under patent '333. The Defendants, therefore, cannot rely on that opinion as

---

1. Whether patent '080 covers the use of sugar as well as nonsugar inhibitors is a factual issue of no relevance to the Court's decision.

2. Pursuant to this Court's opinion in *The Procter & Gamble Co. v. Nabisco Brands, Inc.*, 109 F.R.D. 673, 678 (D.Del.1986), the parties have formalized P & G's promises not to sue under these patents in a written stipulation. D.I. 735, 736, 737.

3. Nabisco's Fourth Affirmative Defense, Keebler's Third Affirmative Defense, Frito–Lay's Fourth Affirmative Defense and Keebler's First and Third Counterclaims. D.I. 693, 694, 695.

4. The Court held that because P & G's promises not to assert claims under patent '969 or patent '080 eliminated any apprehension Defendants might have had about being sued, declaratory relief would be inappropriate.

support for the affirmative defenses or counterclaims involved in this motion.

## I. AFFIRMATIVE DEFENSES

Under Federal Rule of Civil Procedure 12(f), the Court may strike any defense that is redundant, immaterial or legally insufficient. Motions to strike affirmative defenses are disfavored by courts. *Milton Roy Co. v. Bausch & Lomb Inc.*, 418 F.Supp. 975, 977 (D.Del.1976). When considering such a motion, the Court must construe all the facts in favor of the non-moving party (Defendants) and deny the motion if the defense is sufficient under law. *Talarowski v. Pennsylvania R.R.*, 135 F.Supp. 503, 504 (D.Del.1955).

Defendants have presented two theories in support of their affirmative defense to P & G's patent '333 infringement claim. According to the first theory, P & G's alleged inequitable conduct with respect to patent '969 and patent '080, by itself, renders patent '333 unenforceable. *Frito–Lay's* Answering Brief, D.I. 739 at 18–25. Under the second theory, evidence of P & G's alleged inequitable conduct with respect to patent '969 and patent '080 can be used to support Defendants' preexisting defense that P & G's alleged inequitable conduct with respect to patent '333 makes patent '333 unenforceable. *Keebler's* Answering Brief, D.I. 741 at 11–18.

### A.  *Alleged Inequitable Conduct with Respect to Patent '969 and Patent '080 Does Not Make Patent '333 Per Se Unenforceable*

For purposes of this motion, the Court takes the following facts presented by Defendants as true: (1) P & G made misrepresentations before the Patent and Trademark Office ("PTO") during the application processes for what eventually became patent '969 and patent '080; (2) these misrepresentations were material because they had a substantial likelihood of being considered important by a reasonable examiner in deciding whether to allow the applica-

tions to issue as patents; (3) P & G made these misrepresentations with intent, gross negligence or recklessness. D.I. 741 at 8–9; D.I. 739 at 25–26. On the basis of these assumed facts, P & G's acts before the PTO constituted inequitable conduct. *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1397 (Fed.Cir.1986); *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1368 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); 37 C.F.R. § 1.56 (1987).

The crux of Defendants' argument is that P & G's inequitable conduct with respect to patent '969 and patent '080 renders patent '333 unenforceable because patent '969 and patent '080, and the related inequitable conduct, have a "connection" with patent '333. D.I. 739 at 18–23. Even if the Court were to accept this theory as a matter of law, Defendants' position must fail. The facts pleaded by Defendants show that any connection between patent '333 and the other two patents is tenuous at best.[5]

#### 1.  Lack of Connection Between Patent '333 and Patent '969

Patent '969 was issued on August 17, 1982, almost two years before patent '333 was issued on June 14, 1984. If patent '333 is sufficiently related to the earlier patent '969, the authorities suggest that inequitable conduct with respect to patent '969 might render patent '333 unenforceable. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Boots Laboratories, Inc. v. Burroughs Wellcome Co.*, 223 U.S.P.Q. 840, 848–49 (E.D.Va.1984) [available on WESTLAW, 1984 WL 15504]; 37 C.F.R. § 1.56(d) (1987). Patent '333, however, has virtually no connection with patent '969.

#### (a)  *Patent Applications and Inventors*

According to Exhibit 4 of Frito–Lay's Answering Brief, D.I. 739, patent '333 and

---

5. In support of their claim of a "connection", Defendants have alleged that P & G had a *"scheme* to acquire claim coverage on all ways to make the so-called dual textured cookies."

D.I. 739 at 11 (emphasis in original). A mere scheme to obtain as many patents as possible, without inequitable conduct, is certainly not improper.

patent '969 have no common application serial numbers. Patent '969 started with application serial number 220,603. The serial numbers of the applications leading to patent '333 are 107,229, 220,643, and 240,-051.[6] The facts pleaded by Defendants fail to establish that the applications for the two patents were in any way connected. This absence of interrelatedness makes the commonality of inventors irrelevant.

### (b) Patent '333 Does Not Rely on Patent '969

The facts pleaded by Defendants demonstrate that patent '333 and patent '969 cover two distinct processes. Patent '333 involves the use of two different types of dough; patent '969 teaches the use of only one. Patent '333 relies on two types of sugar to establish the crispy-chewy dual texture; patent '969 uses an enzyme for this purpose. D.I. 739 at 9–10. Defendants have pleaded no facts that suggest that patent '333 depends on patent '969; rather, Defendants' facts indicate that the process described in patent '333 stands on its own. *See Boots Laboratories,* 223 U.S. P.Q. at 850 (mutual independence of two patents precluded existence of connection).

### (c) Incorporation by Reference

Patent '333 incorporates by reference patent '969 as an alternative method of production. Column 12, lines 48–51 of patent '333 state: "While the foregoing illustrates a preferred mode of practicing the present invention, other executions of the basic concepts of the present invention can also be practiced." D.I. 739, Exhibit 1. From column 12, line 67, to column 13, line 4, patent '969 is identified as one such "other execution": "One method of preparing the cookies of this invention is the single dough invertase process of Youngquist ... U.S. Pat. No. 4,333,969 ... which is hereby incorporated herein by reference." *Id.* The purpose of incorpo-

ration, therefore, was not to lay a building block for patent '333 but only to refer the reader to a *different, unrelated* method. The facts pleaded by Defendants indicate that the process described in patent '333 does not depend on the teachings of patent '969. D.I. 739 at 9–10. Regardless of whether the Court could ever incorporate the inequitable conduct of a patent along with its teachings,[7] the Court will not do so here. Patent '333 is entirely independent of patent '969. In addition, whether patent '969 is unenforceable or not has little bearing on the validity of what it teaches. The independent source of an additional method of production makes any "connection" extremely attenuated.

Another incorporation issue is the incorporation by patent '969 of application serial number 220,643, one of the applications that led to patent '333. Column 1, lines 63–68 of patent '969 state: "Cookie texture can be quantified, as described in ... Ser. No. 220,643 ... which is hereby incorporated by reference, in terms of stiffness ... and plasticity...." D.I. 739, Exhibit 2. This incorporation refers to a method of quantifying cookie texture, not a method of making dual-textured cookies. Undoubtedly, a process to vary the texture within a cookie must use some method of quantifying texture. The crux of patent '333, however, is how to *make* dual-textured cookies, not how to *measure* the textural differences. Although such measurements are relevant to the patent '333 process, they are unrelated to the patent's basic teaching, *i.e.,* the use of two types of sugar to obtain the desired texture. By themselves, therefore, such measurements have an insufficient nexus to the process of production to establish a "connection" between patent '333 and patent '969.

Defendants' facts, therefore, fail to establish a connection between patent '969 and patent '333. In addition, Defendants

---

6. Inadvertently issued patent 4,374,862 preceded the issuance of patent '333. D.I. 739 at 17.

7. The Court has serious reservations about whether one patent could ever incorporate, along with the teachings of another patent, the inequitable conduct associated with another patent. Even if the incorporated patent is ultimate-

ly unenforceable, the teachings of that patent are still available as information within the public domain. Subsequent inventors should be able to rely on those teachings without having to worry about incorporating the misdeeds underlying the incorporated patent's unenforceability.

have presented *no* facts that support their claim that inequitable conduct with respect to patent '969 affected the issuance or scope of patent '333. To the contrary, all the facts presented in Defendants' briefs indicate that the applications leading up to, and the processes described in, the two patents are mutually independent. *Cf. Hemstreet v. Burroughs Corp.,* 666 F.Supp. 1096, 1126 (N.D.Ill.1987) (patents that originated from same application, utilized same circuit technology and relied upon same undisclosed prior art were sufficiently related to render both unenforceable on the basis of inequitable conduct with respect to earlier patent). For these reasons, patent '333 and patent '969 are, as a matter of law, insufficiently connected for the purpose of rendering patent '333 unenforceable on the basis of alleged inequitable conduct with respect to patent '969.

### 2. Lack of Connection Between Patent '333 and Patent '080

Patent '080 was issued on March 5, 1985, almost nine months after patent '333 was issued on June 14, 1984. Defendants contend that inequitable conduct with respect to a subsequently issued patent can render an earlier patent unenforceable if the two patents are sufficiently connected. D.I. 739 at 18–23. Even if the Court were to accept this legal theory, Defendants' argument is unpersuasive; Defendants' facts indicate that patent '333 has little or no connection with patent '080.

#### (a) *Patent Applications*

According to Exhibit 4 of Frito–Lay's Answering Brief, D.I. 739, patent '333 and patent '080 have one common application serial number—240,051 (" '051"). The applications that led to patent '333 had serial numbers 107,229, 220,643 and '051. The serial numbers of the applications for patent '080 are 396,525, 466,822 and '051.

According to Defendants, application '051 contained broad "any crystallization inhibitor" claims that P & G was forced to drop in order to obtain patent '333. D.I. 739 at 12–14. Defendants state that P & G pursued these dropped claims in subsequent applications that led

to patent '080. *Id.* at 14. Claims that P & G removed from their applications for patent '333, therefore, eventually found their way into patent '080.

These assertions, taken as true, do not establish a sufficient nexus between patent '333 and patent '080. Defendants admit that "a series of crash experiments" and "more applications" were necessary for P & G to convert the removed claims of application '051 into patent '080. *Id.* at 17. The distance traveled from application '051 to patent '080 makes the connection between patent '333 and patent '080 extremely attenuated. The facts pleaded by Defendants, therefore, fail to establish that the applications for the two patents were more than tangentially connected.

#### (b) *Patent '333 Does Not Rely on Patent '080*

Patent '333 teaches the use of two types of sugar to obtain the crispy-chewy dual texture. Crystallization-resistant sugar is used on the inside of the cookie to maintain a soft center and crystallizing sugar is used on the outside of the cookie to maintain a harder exterior. Patent '080 teaches the use of crystallization inhibitors which, for the purposes of this motion, the Court will assume may be either sugars or nonsugars. The scope of patent '080, therefore, overlaps that of patent '333 to the extent that patent '080 covers sugar crystallization inhibitors.

This overlap does not make patent '333 dependent upon patent '080. No one disputes that patent '333 covers sugar crystallization inhibitors. Whether a subsequent patent such as patent '080 covers, among other things, sugar crystallization inhibitors can have no relevance to the viability of patent '333; the later, broader claims of patent '080 cannot subordinate the earlier, narrower claims of patent '333.

The mere overlapping of claimed subject matter does not establish a "connection" between patent '333 and patent '080. The claims of the two patents stand on their own. Their mutual independence makes any repetition of claims insufficient to establish a "connection." *See Boots Laboratories,* 223 U.S.P.Q. at 850.

Because of this overlap, however, P & G had to file a terminal disclaimer so that patent '080 would expire at the same time as patent '333. Defendants argue that this disclaimer established a connection between patent '333 and patent '080. D.I. 739 at 22–23. The purpose of a terminal disclaimer is to prevent double patenting by restricting the term of the later patent to the lifetime of the earlier patent. *In re Longi*, 759 F.2d 887, 894 (Fed.Cir.1985). A terminal disclaimer, therefore, affects that later patent, not the earlier one. If one of the patents could be said to "rely" upon the other, patent '080 relies on patent '333 because patent '333 defines the lifetime of patent '080. This reliance establishes, at best, a tenuous connection between the two patents; by itself, this relatedness does not rise to the level of a "connection" as contemplated by Defendants' motion.

### (c) *Incorporation by Reference*

Before patent '333 was issued, the PTO inadvertently issued patent 4,374,862 ("'862") on February 2, 1983. D.I. 739 at 17. Patent '080 incorporates by reference inadvertently issued patent '862, a precursor to patent '333, as a means of measuring cookie texture. Column 7, lines 36–39 state: "A method for measuring this texture is detailed in ... U.S. Pat. No. 4,374,-862 ... [which] is herein incorporated by reference." For the reasons discussed in section 1c, such measurements have an insufficient nexus to the patent '333 process of production to establish a "connection" between patent '333 and patent '080.

Defendants' facts, therefore, fail to establish a connection between patent '333 and patent '080. In addition, Defendants' facts indicate that the alleged inequitable conduct with respect to patent '080 had no effect on the issuance or scope of patent '333: The applications for the two patents are almost entirely unrelated and the claims in patent '333 are independent of those in patent '080. *Cf. Hemstreet*, 666 F.Supp. at 1126. For these reasons, patent '333 and patent '080 are, as a matter of law, insufficiently connected for the purpose of rendering patent '333 unenforceable on the basis of alleged inequitable conduct with respect to patent '080.

### B. *Admissibility of Evidence of Alleged Inequitable Conduct With Respect to Patent '969 and Patent '080*

As an affirmative defense, Keebler asserts that evidence of P & G's alleged inequitable conduct with respect to patent '969 and patent '080 further evidences P & G's alleged inequitable conduct in obtaining patent '333. D.I. 741 at 12. This is an evidentiary argument, not an affirmative defense. Keebler does not set forth a new, legally cognizable defense but merely asks the Court to consider additional evidence to support its preexisting affirmative defense of inequitable conduct with respect to patent '333. The Court, therefore, rejects Keebler's pleading as an affirmative defense and will address it instead as an evidentiary matter.

█ The evidentiary issue is whether evidence of P & G's acts before the PTO with respect to patent '969 and patent '080 is admissible under Federal Rule of Evidence 404(b) to prove inequitable conduct with respect to patent '333. Under 404(b), evidence of specific acts is admissible to prove the existence of a plan, scheme, motive, opportunity, intent, preparation, knowledge, identity or absence of mistake or accident. The specific acts may have occurred before or after the event giving rise to the cause of action. *United States v. Serlin*, 707 F.2d 953, 959 (7th Cir.1983); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir.1982). Keebler claims that the alleged inequitable conduct with respect to patent '969 and patent '080 is part of a "scheme, design and pattern by plaintiff of inequitable conduct and unclean hands in the acquisition of a group of related patents, including the patent in suit [patent '333] and United States Letters Patent Nos. 4,344,969 and 4,503,080." D.I. 741 at 11 (quoting Keebler's Third Affirmative Defense, ¶ 26).

Keebler has provided insufficient facts for the Court to decide the admissibility of this evidence. Although Keebler has pleaded facts describing the alleged ineq-

uitable conduct with respect to patent '969 and patent '080, *id.* at 9, Keebler has not come forth with *any* facts showing how P & G planned the inequitable conduct as part of a grand scheme; merely alleging the existence of a plan or scheme is not enough. Defendants must, therefore, move *in limine* or proffer the evidence at trial before the Court will rule on its admissibility.

Although the Court will entertain further arguments on this issue, Defendants should realize that they bear an extreme burden. They must show how the inequitable conduct with respect to patent '969 and patent '080 is connected to a plan or scheme to use inequitable conduct to obtain patent '969, patent '333 and patent '080. *United States v. Lewis,* 693 F.2d 189, 193 (D.C.Cir.1982). Based on what Defendants have proffered so far, the nexus has not been shown. *Cf. United States v. Hill,* 629 F.Supp. 493 (D.Del.1986). What has been shown, however, based on the present record, is that Defendants want to prove inequitable conduct relative to patents '969 and '080 as demonstrating Plaintiff's propensity to commit inequitable conduct relative to patent '333. The Court will not admit the evidence if its sole purpose is to show propensity. *United States v. Long,* 574 F.2d 761, 765 (3rd Cir.1978).

## II. COUNTERCLAIMS

Keebler's counterclaims mirror its affirmative defense that the Court rejected above. Keebler states: "The acts of inequitable conduct in the '969 and '080 patents are pleaded in these counterclaims again only to the extent that they are evidence of the inequitable conduct which has occurred...." D.I. 741 at 22. For the reasons stated above, the Court rejects these counterclaims.