**BRISTOL–MYERS SQUIBB COMPANY, Plaintiff,**

v.

**ERBAMONT INC., Farmitalia Carlo Erba, S.r.l., and Erbamont, N.V., Defendants.**

**Civ. A. No. 89–103–CMW.**

United States District Court, D. Delaware.

April 17, 1990.

David A. Anderson of Potter, Anderson & Corroon, Wilmington, Del. (S. Leslie Misrock, Brian M. Poissant, John J. Lauter, Laura A. Coruzzi and John L. Normile of Pennie & Edmonds, New York City, of counsel), for plaintiff.

Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del. (Garland P. Andrews, David L. Hitchcock, Eugenia S. Hansen and Stuart L. Watt of Richards, Harris, Medlock & Andrews, Dallas, Tex., of counsel), for defendant Erbamont Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The plaintiff, Bristol–Myers Squibb Company ("Bristol–Myers") brought a declaratory judgment action pursuant to 28 U.S.C. §§ 1338(a), 2201, and 2202 on March 3, 1989, against Defendants Erbamont, Inc. ("Erbamont"), Farmitalia Carlo Erba, S.r.l. ("Farmitalia"), and Erbamont, N.V. Bristol–Myers sought a declaration of invalidity, noninfringement, and unenforceability with respect to United States Patent 3,803,124 (the " '124 patent").[1]

On April 12, 1989, Erbamont counterclaimed against Bristol–Myers for infringement of the '124 patent on the basis of 13 kilograms of allegedly infringing material which Bristol–Myers had caused to be brought into the United States. This counterclaim was grounded upon the recently enacted patent process statute, 35 U.S.C. § 271(g). In response to this counterclaim, Bristol–Myers moved for summary judgment of noninfringement on May 5, 1989. The Court granted this motion and dismissed the counterclaim with prejudice on October 30, 1989.[2]

After the Court's decision on the summary judgment motion, discovery proceeded.

During the course of discovery, Bristol–Myers admitted that it did not intend to import any more of the allegedly infringing material (beyond the 13 kilograms) into the United States until after the '124 patent expires in April of 1991.[3] *See* Bristol–Myers Response to Erbamont's Inc.'s First Request for Admissions (Appendix to Erbamont's Opening Brief). Accordingly, Erbamont moved for dismissal of this action, or in the alternative, for certification of the summary judgment order pursuant to 28 U.S.C. § 1292(b), on February 2, 1990.

For the reasons which will be stated herein, the Court determines that a justiciable controversy has ceased to exist, and the motion to dismiss will be granted.[4]

## I. DISCUSSION

The factual background of this case is adequately presented in the Court's earlier opinion at 723 F.Supp. 1038. The Court held that 13 kilograms of allegedly infringing material (doxorubicin hydrochloride manufactured by Meiji Seika Pharma International of Japan) was exempt from infringement under 35 U.S.C. § 271(g) as a matter of law. Since the Court issued this opinion, Bristol–Myers has stated that this 13 kilograms represents all of the doxorubicin hydrochloride that it intends to bring into the United States before the patent expires in April of 1991.

■ In this context, Erbamont urges that a continuing controversy between itself and Bristol–Myers no longer exists.[5] Bristol–Myers, however, adamantly asserts that this Court should adjudicate the invalidity and enforceability of the '124 patent, although Bristol–Myers has not referred to any quantity of doxorubicin hydrochloride or other material that could infringe

---

**1.** By stipulation and order dated August 22, 1989, Farmitalia and Erbamont, N.V. were dismissed from the original action.

**2.** The Court's opinion is reported at 723 F.Supp. 1038.

**3.** The Court does not use the term "import" in the context of § 271(g).

**4.** This decision renders the motion for certification moot; the Court's order today finally disposes of this case so that either party is free to pursue appeals at this point.

**5.** When the declaratory judgment action was filed in March of 1989, there was no dispute that there was a justiciable controversy between the parties.

the '124 patent. Adjudication of the validity and enforceability issues would unquestionably amount to nothing more than an advisory opinion, and needlessly employ valuable judicial resources. Consequently, the Court cannot discern any possible reason why this case should not be dismissed.

■ Under the Declaratory Judgment Act, a live controversy must be present at *all* stages of review, and not just at the time the complaint is filed. *Grain Processing Corp. v. American Maize–Products Co.,* 840 F.2d 902, 905–06 (Fed.Cir.1988); *Akzona Inc. v. E.I. du Pont de Nemours & Co.,* 662 F.Supp. 603, 607 (D.Del.1987). To establish the need for a declaratory judgment, Bristol–Myers must satisfy a two part analysis. First, Bristol–Myers must show that Erbamont's conduct has created a reasonable apprehension that it will be subjected to an infringement suit if it commences or continues production. *Akzona,* 662 F.Supp. at 610. Second, Bristol–Myers must present credible allegations of *immediate intent* and ability to undertake the business that must bring it into collision with Erbamont's patent rights. *Id.* (emphasis supplied). Bristol–Myers undoubtedly fails in the second prong of the test.[6]

Bristol–Myers has stated that it does not intend to import any more doxorubicin hydrochloride into the United States until after the patent expires. Clearly, therefore, there is no market activity which could potentially infringe Erbamont's patent that could take place before the patent expires.

*Akzona,* 662 F.Supp. at 612. Stated another way, Bristol–Myers does not have the immediate intent and capacity to infringe the patent. Bristol–Myers has not even introduced or presented evidence of a purchase order or other similar document to suggest that potentially infringing activity could occur before the patent expires.[7] The Court cannot ascertain how adjudication of the validity and enforceability of the '124 in this Court would constitute anything but an advisory opinion.[8]

The Court also notes that jurisdiction under the Declaratory Judgment Act is highly discretionary, even though a justiciable controversy may exist. *Akzona,* 662 F.Supp. at 617. If the Court feels that the action will serve no useful purpose, then it may refuse to proceed. *Id.* Adjudication of the validity of the '124 patent at this point would serve no useful purpose. The Court has already ruled that the 13 kilograms is exempt from infringement as a matter of law. If the Federal Circuit reverses this decision, then the matter will be remanded back to this Court for full adjudication on the merits.[9] If the ITC prohibits the 13 kilograms from entering United States commerce, Bristol–Myers may appeal ultimately to the Federal Circuit. In making its decision, the ITC is expected to address the validity and enforceability of the '124 patent. If Bristol–Myers does not intend to bring any more doxorubicin into the country until after expiration of the patent, there is no practical purpose for

---

**6.** Erbamont itself admits that the first prong of the test is met. Reply Brief at 6. The Court agrees on this point. Erbamont has shown the desire and ability to enforce its rights under the '124 patent against Bristol–Myers. There is nothing in the record to infer that Erbamont would not attempt to enforce its rights against Bristol–Myers if Bristol–Myers brings more of the allegedly infringing material into the country.

**7.** As Erbamont has commented, "Bristol has failed to specify any doxorubicin on which this Court could make a determination of 'substantive infringement.'" Reply Brief at 11–12.

**8.** Bristol–Myers has made much of the fact that Erbamont has filed an action pursuant to 19 U.S.C. § 1337 with the International Trade Commission ("ITC") to halt the entry of the 13 kilo-

grams of doxorubicin into United States commerce. An initial determination by the ITC administrative law judge is expected by May 21, 1990. Nonetheless, the existence of a controversy in the ITC does not *ipso facto* mean that there is a justiciable case or controversy in the District of Delaware under the Declaratory Judgment Act. If Bristol–Myers is dissatisfied with the results of the initial determination, it certainly can appeal that decision to the full Commission, and ultimately to the Court of Appeals for the Federal Circuit.

**9.** Erbamont has indicated its dissatisfaction with the Court's ruling on this issue and has expressed its intent to appeal it to the Federal Circuit.

this Court to address the validity and enforceability of the patent at this time.

## II. CONCLUSION

In summary, the Court concludes that a justiciable controversy over the validity and enforceability· of the '124 patent no longer exists *in this Court.* There is no longer a sufficient basis to continue jurisdiction under the Declaratory Judgment Act. Furthermore, as a matter of discretion, adjudication of the validity of the patent would serve no useful purpose. Accordingly, Erbamont's motion to dismiss will be granted.

An order shall be issued in accordance with this opinion.